499 A.2d 593

**OGONTZ CONTROLS COMPANY, A Corporation, Appellee,**

v.

**Frederick L. PIRKLE, Individually and T/A Controls Consulting Company, Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1985.

Filed Sept. 6, 1985.

Reargument Denied Nov. 6, 1985.

254

Thomas B. Kenworthy, Philadelphia, for appellant.

Fred T. Cadmus, III, Pottstown and Norman L. Norris, Philadelphia, for appellee.

Before MONTEMURO, POPOVICH and WATKINS, JJ.

MONTEMURO, Judge:

This case is before us for the second time. In the earlier appeal, we vacated the order of the trial court, which had continued a preliminary injunction against appellant (hereinafter Pirkle), because the court had denied Pirkle his right to a fair hearing pursuant to Pa.R.Civ.P. 1531(d). We then

remanded the case in order to permit Pirkle the opportunity to present testimony or other evidence in his own behalf. *Ogontz Controls Co. v. Pirkle*, 329 Pa.Super. 8, 477 A.2d 876 (1984).

In accordance with this court's directive, the trial court scheduled a hearing for June 21, 1984. At the hearing, appellee (hereinafter Ogontz) presented evidence consisting of the testimony of Ogontz' president, Thomas M. Kenny, and Ogontz' director of engineering, Nicholas J. Tallos. Pirkle's counsel cross-examined both of these witnesses. Pirkle, however, produced no testimony or other evidence in his own behalf, informing the court that he could not properly do so until further discovery took place. Subsequently, by a letter dated July 5, 1984, Pirkle's counsel informed the court that he intended to take no further discovery and would rely on the evidence as already presented. He also informed the court that Ogontz' previously filed motion to reinstate the preliminary injunction was " 'now ripe for disposition.' " Lower Court Opinion of May 9, 1985, at 2; Appellant's brief, at 5. By order dated May 9, 1985, the trial court reinstated the preliminary injunction. This appeal followed.

The foregoing procedural history grew out of a complaint in equity, filed by Ogontz, alleging that Pirkle, a former Ogontz employee, had violated his employment contract and misappropriated trade secrets. Pirkle allegedly was manufacturing and selling a particular water valve,[1] used in the railroad industry, in direct violation of his employment contract. Although Pirkle had left Ogontz' employ prior to the filing of the complaint, Ogontz claimed that because the valve in question had been developed while Pirkle was still employed by Ogontz, Pirkle's subsequent actions represented a violation of specific provisions of the employment contract.[2]

**1.** After his employment with Ogontz terminated, Pirkle received patents for the valve.

**2.** The pertinent provisions of the contract, which both parties agree applies, are as follows:

The complaint sought to enjoin Pirkle from manufacturing and selling the valve, as well as to recover the total amount of sales of all valves sold by Pirkle, and other relief. A preliminary injunction was requested pending the outcome of the trial on the merits.

As his first assignment of error, Pirkle argues that the lower court lacked subject matter jurisdiction and therefore could not order the preliminary injunction. He claims the cause of action falls within the exclusive jurisdiction of the federal courts as a matter of federal patent law. We disagree.

The mere mention of a patent in a cause of action will not automatically vest the federal courts with exclusive jurisdiction. While this Commonwealth has long recognized the exclusive jurisdiction of the federal courts in civil actions arising under the patent laws, the Pennsylvania Supreme Court has held that where patent rights are only indirectly involved, "jurisdiction is properly in the courts of

1. EMPLOYEE agrees to perform for COMPANY such duties as may be designated by COMPANY from time to time and agrees that any and all inventions or improvements which EMPLOYEE may at any time make, individually or jointly with others, during the continuance of EMPLOYEE's employment which shall be within the existing or contemplated scope of COMPANY's business or which may be useful in connection with said business, shall be the exclusive property of COMPANY, and EMPLOYEE further covenants and agrees to make full and prompt written disclosure to COMPANY of any and all such improvements and to execute and acknowledge, at the request and expense of COMPANY, any and all papers whatsoever necessary and proper for the applying and securing and assigning to COMPANY any and all Letters Patent for said inventions or improvements in the United States and foreign countries and for vesting full title to said inventions and Letters Patent to COMPANY.

2. EMPLOYEE agrees to receive in confidence all information with reference to the work of COMPANY which is of technical, confidential or secret nature, other than routine mechanical skills, and will aid and assist COMPANY to maintain the secrecy of the same, and EMPLOYEE further agrees that he will not, as long as said employment shall continue not at any time thereafter, divulge or disclose to others, or make any use of, except for COMPANY, and such information which EMPLOYEE may gain in or by reason of said employment with respect to any product, process, device, machine or apparatus considered, made, used, installed, experimented upon or developed by or for COMPANY.

the Commonwealth." *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 254, 213 A.2d 769, 772 (1965) (gravamen of the action was misappropriation of trade secret). Patent rights are incidental or indirectly involved when the "cause of action [is for] the breach of a contract or wrongful disregard of confidential relations," and thus the state courts properly have jurisdiction over the matter. *Becher v. Contoure Laboratories, Inc.*, 279 U.S. 388, 391, 49 S.Ct. 356, 357, 73 L.Ed. 752 (1929). The instant case, involving the alleged breach of an employment contract and misappropriation of trade secrets, is clearly within the jurisdiction of the court of common pleas.

■ Having found that the lower court had subject matter jurisdiction, and before turning to Pirkle's other assignments of error, we note preliminarily our standard of review in appeals from the grant or denial of a preliminary injunction. Our review has been rather narrowly defined, and it is well established that an appellate court will not inquire into the merits of the controversy but will only examine the record to determine if there were any apparently reasonable grounds for the trial court's actions. *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976); *Three County Services, Inc. v. Philadelphia Inquirer*, 337 Pa.Super. 241, 486 A.2d 997 (1985). Furthermore, our supreme court has stated:

> ... the essential prerequisites for the issuance of a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, [410 Pa. 214, 189 A.2d 180 (1963)].

> Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such

activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded: *Keystone Guild, Inc. v. Pappas,* 399 Pa. 46, 159 A.2d 681 (1960), and *Herman v. Dixon,* 393 Pa. 33, 141 A.2d 576 (1958).

*Albee Homes, Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 181, 207 A.2d 768, 770 (1965).

■ As his next assignment of error, Pirkle argues that preliminary injunctive relief is inappropriate in this case, where the lower court granted the requested relief based upon an eleven month old record. Because no evidence has been presented since the June 21, 1984 hearing, he claims Ogontz has failed to show any injury which is imminent. However, our review of the record leads us to conclude that there are apparently reasonable grounds to support the trial court's finding of imminent injury.

The lower court based its conclusion upon the testimony of Thomas Kenny, Ogontz' president. At the June 21, 1984 hearing, Kenny testified that the valve developed by Pirkle was one which "answered the problem that [Ogontz] had been seeking to solve for quite a few years; and in light of that fact, they were very interested in using it." (N.T. June 21, 1984 at 32–33). "They", referred to by Kenny, were the railroad industry generally, and CONRAIL especially. (*Id.* at 31). Kenny also testified that Pirkle was luring away Ogontz' customers, forcing the company to embark on a crash program to develop a new valve of its own, while at the same time it was trying to reassure and hold on to its present customers. In short, he testified that Pirkle's dealings with Ogontz' clients created a serious credibility problem for his firm. (*Id.* at 33–40). Furthermore, Kenny testified that if no injunction was ordered, Ogontz would be in danger of losing CONRAIL's business, which accounted in the previous year for $564,000 in revenues, making CONRAIL by far Ogontz' largest customer. The loss of

CONRAIL's business would also require a substantial reduction in Ogontz' work force. (*Id.* at 54–56).[3]

We believe this uncontradicted testimony allows for the reasonable inference drawn by the lower court that Pirkle's activities constituted an ongoing threat of imminent injury to Ogontz. *Cf. John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977) ("It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitute the justification for equitable intervention"). Kenny's testimony addressed the consequences accruing to Ogontz if no injunction were to issue, but he clearly was speaking in general terms, not just as of the moment he was on the stand. In addition, the whole theory of the case, and Pirkle's defense, is premised on whether or not Pirkle should be allowed to compete, not whether or not he *would* compete if an injunction did not issue. Given these circumstances, and in light of our standard of review, we shall not disturb the lower court's conclusion on this basis.

■ Appellant next argues that equity may not grant injunctive relief until the disputed property rights regarding the patent ownership are first determined by trial before a jury, citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). While it is not clear from Pirkle's brief just how the federal anti-trust case applies here, it is clear that our supreme court has held that "while patent laws may be involved, if they are purely

---

**3.** In response to questioning by the court, Kenny stated that Ogontz' crash program had produced a product equivalent to Pirkle's, and that Ogontz had applied for a patent on its new valve. Asked why he thought CONRAIL would choose Pirkle over Ogontz, Kenny explained it was his belief, based on his understanding of the industry, that Pirkle was considered something of a technical wunderkind because of his early appearance in the market with the much desired valve. He admitted he could not be certain of the outcome of the competition between Pirkle and Ogontz for CONRAIL business. (N.T. June 21, 1984, at 66–68).

incidental and collateral to the main issue of the case ... our courts are not precluded from acting under their general equity powers." *Van Products Co. v. General Welding & Fabricating Co., supra,* 419 Pa. at 254, 213 A.2d at 773. Indeed, it has long been established, for example, that an assignment of patents or patent rights may be enforced in equity, and that the enforcement may be by means of an injunction. *Hepworth v. Henshall,* 153 Pa. 592, 25 A. 1103 (1893); *see also, Quaker State Oil Refining Co. v. Talbot,* 322 Pa. 155, 158, 185 A. 586, 587–88 (1936) ("equity once having properly assumed jurisdiction should retain it to fully determine the whole controversy and do justice to all parties involved"). We find no merit to Pirkle's claim, which is essentially supported by general phrases gathered from cases which are inapposite. We find the lower court properly exercised its equity powers when it ordered the preliminary injunction pending the outcome on the merits, and therefore find no merit to this argument.

The next assignment of error advanced by Pirkle is that the lower court incorrectly found that greater harm would be done by refusing the preliminary injunction than by granting it. He claims the injuries to Ogontz from refusing the injunction are speculative at best, while Pirkle will be devastated and put out of business by the reinstatement of the injunction.

This court has held that "a person may be enjoined from engaging in employment where that employment is *likely* to result in the disclosure of information, held secret by a former employer, of which the employee gained knowledge as a result of his former employment situation." *Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 416, 422, 442 A.2d 1114, 1120 (1982) (emphasis added). In the instant case, although Kenny testified that he could not be certain of the amount of business which Pirkle would garner from Ogontz if no injunction issued, it has never been contested in the history of these proceedings that Pirkle had sold valves to CONRAIL when no injunction was

in effect. Indeed, Pirkle has consistently argued that the injunction unfairly puts him out of business—the business of selling the valve he designed to CONRAIL. *See* Appellant's Brief at 16. There is not here the likelihood of harm to Ogontz, but rather, by virtue of Pirkle's own argument, the certainty of it. We do not find the evidence too speculative to support the findings of the lower court.

The argument made by Pirkle also ignores the fact that his very presence in the market as a seller of the valve allegedly developed while he was employed at Ogontz, is precisely the harm sought to be avoided by Ogontz when both Pirkle and the company entered into the employment contract. In comparison to the immediate and irreparable harm [4] which Ogontz would suffer, Pirkle, "[a]t worst, ... will be deprived of [possible earnings], which may be compensated by damages in the event it appears at final hearing that the injunction was improvidently granted." *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 221, 189 A.2d 180, 184 (1963) (A case involving, *inter alia,* an agreement between employer and employee that all products developed by employee were the property of employer).

In many respects, this case is similar to cases in which a former employer alleges that his former employee has violated an anti-competition provision of an employment contract. *See, e.g., John G. Bryant Co. v. Sling Testing & Repair, Inc., supra; Sidco Paper Company v. Aaron, supra.* (and cases cited therein). In those cases, the defendant can often claim great harm, because a preliminary injunction puts him out of business or out of a job. However, preliminary injunctions have been approved in those situations due to the very nature of the agreed upon restric-

---

**4.** Although the "irreparableness" of harm is not directly at issue in this appeal, we note that Ogontz, in its complaint and motion for preliminary injunction, alleged and sought nonmonetary as well as monetary damages. *See Three County Services, Inc. v. Philadelphia Inquirer,* 337 Pa.Super. 241, 249 n. 1, 486 A.2d 997, 1001 n. 1 (1985). Ogontz also alleged damages which are not fully compensable.

tion, to prevent the *way* in which the former employee goes about making his or her livelihood after leaving the former employer. Also, in those cases, the preliminary injunctions were carefully tailored to be reasonable, often limiting the scope of the restriction. Likewise, in the instant case, Pirkle is prohibited from manufacturing and selling only the valve allegedly developed at Ogontz. He is not precluded, in any other way, from making a living. We do not agree that the lower court incorrectly balanced the relative harm in this case.

Finally, Pirkle contends that it was error on the part of the lower court not to grant his motion for recusal. Pirkle argues that Judge Leonard Sugerman's impartiality in the proceedings below has been drawn into serious question because of "findings of facts" expressed in his opinion dated December 7, 1983.[5]

What Pirkle neglects to explain is that the section of Judge Sugerman's opinion to which he refers, deals with one of the essential prerequisites to the issuance of a preliminary injunction, i.e., whether the plaintiff's right to the relief sought is clear. *Albee Home, Inc. v. Caddie Homes, Inc., supra; Courier Times, Inc. v. United Feature Syndicate, Inc.,* 300 Pa.Super. 40, 445 A.2d 1288 (1982). The lower court properly conducted this analysis in reviewing Pirkle's earlier contention that the preliminary injunction was improper. We do not find this proper review by Judge Sugerman, a respected and distinguished trial judge, to have constituted a showing of partiality. We are confident that Judge Sugerman will continue to ably preside impartially in this cause of action which is now some twenty-two months old.

Having found that the lower court properly reinstated the preliminary injunction, we affirm.

Order affirmed.

5. · This opinion was written by Judge Sugerman in response to Pirkle's first appeal to this court.