589 A.2d 752

**Forrest SCHAEFFER, President Judge of the Court of Common Pleas of the County of Berks, Appellant,**

v.

**Linda Hilgendorf FREY, Recorder of Deeds of the County of Berks.**

Superior Court of Pennsylvania.

Argued Sept. 27, 1990.

Filed April 22, 1991.

Paul R. Ober, Reading, for appellant.

Jeffrey L. Schmehl, County Sol., Reading, for appellee.

Before BECK, KELLY and POPOVICH, JJ.

BECK, Judge:

Appellant, President Judge Forrest Schaeffer of the Court of Common Pleas of Berks County, appeals the denial of his request for injunctive relief against the Berks County Recorder of Deeds, Linda Frey. Judge Schaeffer sought to prohibit any further debinding or cutting of the Berks County deed books as part of a county contract to reproduce the deed books onto microfilm. Because we find appellant has not met the standards required in order to be awarded injunctive relief, we affirm the trial court's order.

The relevant facts, which are generally undisputed, are as follows. Berks County entered into a contract in December 1986 to have the county deed books reproduced onto microfilm.[1] Appellee, the Berks County Recorder of Deeds, a duly elected county officer, was named as Berks County's agent for the contract and as the contract supervisor. In

---

1. The authority to reproduce the Berks County deed books onto microfilm is based upon 65 P.S. § 63.1 (1949). Section 63.1, applicable to all counties except counties of the first class, authorizes any public officer to copy or microfilm a document where the copy produces a clear, accurate and permanent copy. Berks County is a county of the third class.

order to accomodate the microfilming process, some of the deed books have been debound.[2] Almost three years after the initiation of the contract, and after approximately 1200 of a total 1916 deed books had been microfilmed, appellant, *sua sponte*, entered a temporary restraining order ("TRO") prohibiting the Recorder of Deeds from further cutting or breaking of bindings of the deed books. The temporary restraining order remained in effect for thirty days. After the lapse of the TRO, Judge Schaeffer filed the subject equity action requesting a preliminary and permanent injunction to enjoin any continuation of the debinding, breaking, cutting, or removing of pages from the Berks County deed books without the express approval of the court of common pleas.

As part of the instituted equity action, an evidentiary hearing was held before a judge.[3] Testimony was presented by appellee Linda Frey, appellant Judge Schaeffer, William Campbell, the Berks County Controller, and Frank Johns, the Berks County District Court Administrator. As a result of the hearing, the lower court determined (1) the Berks County microfilming contract was properly authorized by law, 65 P.S. § 63.1; (2) appellee had acted in accordance with the law; (3) there was no destruction of the deed records that are within the responsibility of appellee; and (4) appellant had failed to demonstrate any irreparable harm if the injunction was not granted. Therefore, the court denied Judge Schaeffer's request for injunctive relief. This timely appeal followed.[4]

2. The evidence in record does not clearly explain how the deed books have been debound. At the lower court evidentiary hearing, there was extensive questioning relating to the "cutting" of the deed record pages from the book bindings. (N.T. at 25–40). However, details of this "cutting" process were not introduced into the record. It is clear that the deed book pages were removed from the book binding and each page was separately photographed. (N.T. at 33–36).

3. Judge Beckert, senior judge from Bucks County, presided over the equity hearing.

4. Neither party to this appeal has objected to our jurisdiction, as opposed to that of the commonwealth court, to consider this matter. Therefore, our jurisdiction has vested, is perfected, and we may

564

 Appellant raises two specific issues for our review. First, Judge Schaeffer contends he has been irreparably harmed by the debinding of the deed books, because the debinding precludes him from exercising the judicial discretion granted pursuant to 16 Pa.S.A. § 9872. Second, he argues that he has been irreparably harmed by the debinding of the deed books, because the books are within the responsibility and protection of the court; therefore, the debinding of the books without the knowledge of the court erodes and undermines public confidence in the court.[5]

 Our scope of review of a trial court's grant or denial of injunctive relief is limited. *Crozer Chester Medical Center v. May,* 352 Pa.Super. 51, 55, 506 A.2d 1377, 1379 (1986), *appeal denied,* (Pa., Dec. 10, 1986); *Buttonwood Farms, Inc. v. Carson,* 329 Pa.Super. 312, 315, 478 A.2d 484, 485 (1984). On appeal, this court "is restricted to whether there were any apparently reasonable ground[s] for the action taken by the court below." *Beck Computing Serv. v. Anderson,* 362 Pa.Super. 505, 508, 524 A.2d 990, 991 (1987); *Crozer Chester,* 352 Pa.Super. at 56, 506 A.2d at

properly review this appeal. *See* 42 Pa.C.S.A. § 704(a) (1978) (providing that "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this title … vesting jurisdiction of such appeal in another appellate court"); Pa.R.App.P. 741 (reiterating the § 704(a) language); *see also Oswald v. Hausman,* 378 Pa.Super. 245, 250 n. 2, 548 A.2d 594, 597 n. 2 (1988); *Newman v. Thorn,* 359 Pa.Super. 274, 280, 518 A.2d 1231, 1235 (1986), *transferred to, Thorn v. Newman,* 113 Pa.Commw. 642, 538 A.2d 105 (1988); *Rosenberg v. Holy Redeemer Hospital,* 351 Pa.Super. 399, 401–04, 506 A.2d 408, 409–10 (1986), *appeal denied,* 514 Pa. 643, 523 A.2d 1132 (1986); *Schultz v. City of Phila.,* 314 Pa.Super. 194, 197, 460 A.2d 833, 834 (1983).

5. We note that the issue raised in Judge Popovich's dissenting statement, whether an individual president judge of the court of common pleas is empowered to bring a lawsuit on behalf of the entire court without being authorized by a vote of the board of judges, was not raised below. Moreover, that issue was not briefed or argued by either party on appeal. Therefore, such issue was waived and will not be reviewed by this court. Pa.R.App.P. 302(a); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974); *Handschuh v. Albert Development,* 393 Pa.Super. 444, 451, 574 A.2d 693, 697 (1990).

1379; *Ogontz Controls v. Pirkle*, 346 Pa.Super. 253, 256, 499 A.2d 593, 595 (1985). Moreover, unless the record shows that the trial court's ruling was palpably erroneous, a misapplication of law, or a manifest abuse of discretion, this court will affirm the lower court's decision. *Crozer Chester*, 352 Pa.Super. at 55–58, 506 A.2d at 1379–80; *Buttonwood Farms*, 329 Pa.Super. at 315, 478 A.2d at 485. With this standard of review as a foundation, we have reviewed appellant's arguments.

 Injunctive relief, in particular a preliminary injunction, is "considered an extraordinary remedy and may only be granted if the plaintiff has established a clear right to the relief sought." *Soja v. Factoryville Sportsmen's Club*, 361 Pa.Super. 473, 477, 522 A.2d 1129, 1131 (1987). In Pennsylvania, a preliminary injunction will be granted only where a party can demonstrate certain prerequisites. There must exist (1) a threat of immediate and irreparable harm, that cannot be remedied by damages; (2) the injury that would result by denying the injunction must be greater than the injury by granting the equitable relief; and (3) the grant of the injunction must properly restore the parties to the situation as it existed prior to the alleged wrongful conduct. *Ogontz Controls Co. v. Pirkle*, 346 Pa.Super. at 256, 499 A.2d at 595 (1985) (quoting *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 181, 207 A.2d 768, 770 (1965)). Underlying these three requirements, a court, sitting in equity, will not grant an injunction unless the conduct sought to be enjoined is actionable and an injunction can, in fact, restrict the conduct. *Beck Computing Services Inc. v. Anderson*, 362 Pa.Super. at 507–10, 524 A.2d at 991–92 (1987); *Ogontz Controls*, 346 Pa.Super. at 256, 499 A.2d at 595.

Appellant's request for injunctive relief is primarily based on 16 P.S. § 9872, a statute originally enacted in 1827 and later repealed, *except* as it relates to the recorder of deeds.[6] Section 9872 provides in relevant part:

6. Section 9872 was originally enacted as P.L. 154, § 4, on March 29, 1827. The statute was transferred to Title 16, Counties, in 1981.

> At least once in each and every year, * * * it shall be the duty of each of the aforesaid ... recorders of deeds, ... in the several counties of this commonwealth, to submit the books of records belonging to their several offices to the inspection of the judges of the court of common pleas of the proper county; and it shall be the duty of the said court to order and direct such of the said books, as in their opinion may require it, to be bound anew; and also, in all cases where the same may be wanting, to order and direct full and complete indexes of the matters contained in said books to be made and prepared, within such time as the said court may think reasonable.

16 P.S. § 9872 (1827), *repealed in part by* 42 P.S. § 20002(a)[108] (1978). Appellant contends the Berks County contract violates section 9872 and thereby irreparably harms the court of common pleas. The harm to the court is, as argued by appellant, because section 9872 "places the responsibility for the physical integrity of deed books within the discretionary power of the Court of Common Pleas—*not* with the Recorder of Deeds." Brief of Appellant, at 10 (emphasis in the original). Judge Schaeffer argues that the Berks County microfilming contract and the resulting debinding of the deed books irreparably thwarts his statutory duty to inspect and, if required, to order rebinding of the books. As presented by appellant, because the deed books are debound, they are no longer "books" which can be inspected by the court. Moreover, appellant contends that because section 9872 accords him the responsibility for the safeguarding of the deed books, the debinding of the books as part of the Berks County contract, without his approval, irreparably diminishes and erodes the public confidence in the court.[7] We disagree.

Prior to 1981, the identical statutory language was under Title 17, Court Records, § 1951. The statute, as currently promulgated, only applies to the recorders of deeds. *See* Judiciary Act Repealer Act, 42 P.S. § 20002(a)[108] (1978).

7. We note that although Judge Schaeffer argues § 9872 grants the court of common pleas responsibility over the deed records in the recorder of deeds office, and that the court should inspect the deed

We conclude Judge Schaeffer's argument is without support because the court of common pleas' statutory authority over the recorder of deeds and the deed records in the recorder's custody is limited. Moreover, as determined by the lower court, there has been no demonstration of a destruction of public deed records held by the recorder of deeds. Because the issues in this appeal involve statutes and a county office that began with the creation of our commonwealth, we must, at least briefly, return to the constitutional and statutory language initially creating the position of, and the duties of, the recorder of deeds.

The individual holding the office of recorder of deeds is constitutionally recognized as being a county officer. Pa. Const. art. 9, § 4. The recorder of deeds is elected at municipal elections and holds his or her office for four years. *Id.* Significantly, this court has specifically stated that the recorder of deeds is not a judicial officer.[8] *Custer v. Glessner*, 68 Pa.Super. 60, 61 (1917) (the recorder of deeds "is, in no accurate use of language, an officer of the court").

The primary duty of the recorder of deeds is to serve the public by receiving and duly recording any recordable instruments so as to serve the future necessities of the law. 16 P.S. § 9701 (1715), *repealed where inconsistent with* Act of Aug. 4, 1955, P.L. 303, § 3; 76 C.J.S. *Registers of Deeds* §§ 1, 10(b) (1952) (stating the recorder's duty "is to record deeds, mortgages, and other instruments affecting realty in the official books provided and kept for such purpose"). As the custodian of the recording books, or deed records, the recorder of deeds "is obligated to protect

books annually, both appellee and appellant testified that they do not recall the court having ever inspected, or requesting to inspect the deed books. (N.T. at 79, 135).

8. Sister states have also held that the recorder of deeds is not a judicial officer. *Bergerman v. Byrnes*, 114 N.Y.S.2d 416, 421 (1952), *aff'd*, 305 N.Y. 811, 113 N.E.2d 557 (1953). In *Bergerman*, the court stated that although the recorder was appointed by the president judge of the court and was required to perform "duties under such conditions and regulations as may be approved by the presiding justice," the recorder of deeds was not an officer of the court. *Id.*

the public ... in preserving the integrity of the official records of his [or her] office." 76 C.J.S. *Registers of Deeds* § 10(b). In 1775, the legislature of Pennsylvania first described the duty of the recorder of deeds. As originally enacted, the recorders of deeds "shall keep a fair book, in which he [or she] shall immediately make an entry of every deed or writing brought into his [or her] office to be recorded." 16 P.S. § 9731 (1775), *repealed where inconsistent with* Act of Aug. 4, 1955, P.L. 303, § 3.

Our research shows that not only is the recorder of deeds not an officer of the court, but the records held by the recorder of deeds are not court records. As noted by this court in *Custer*, "the records which, by law, [the recorder of deeds] is required to safely keep, [are not] the records of the judgments or decrees of the court.... [t]hey are the history of the transactions of the people of the county affecting the titles to land." 68 Pa.Super. at 61.

■ We conclude the recorder of deeds, as the custodian of the county deed books, has the duty and responsibility to safeguard the deed records within her custody. Moreover, because the recorder of deeds is not an officer of the court, and the records within the custody of the recorder are not court records, any authority or control the court of common pleas may have over the recorder of deeds or the deed books retained by the recorder must be conferred by statute.

Because appellant primarily relies on 16 P.S. § 9872 in support of his argument that a continuation of the Berks County contract and debinding of the county deed books irreparably harms the court of common pleas, we turn to an analysis of that statute.[9]

9. Judge Schaeffer also cites 16 P.S. § 9876 in his brief in support of his request for an injunction. Section 9876 provides:

It shall be the duty of the commissioners of the several counties of this commonwealth, whenever it shall be deemed necessary by the court of common pleas or district court of the proper county, to cause to be copied or transcribed, in a fair and legible manner, any dockets or books of record contained in the several public offices, in their respective counties, to be paid for out of the county funds,

■ We take it as uncontroverted that in 1827, deed books, *qua* books, were the primary means of permanently recording deeds and other instruments for future reference.[10] The deed books held by the recorder of deeds were the method of systematically recording and permanently retaining an organized history of the real estate transactions within a county. The clear intent of section 9872 was to ensure the integrity of this organized system of recording deeds. Section 9872, as enacted in 1827, created a procedure to ensure that deed books that needed "to be bound anew" because of continued and extensive public use could be systematically rebound.[11] Within this statutory procedure, the court of common pleas has the discretionary authority to determine if any deed books are in such a condition that they need to be rebound. By providing a procedure for checking the integrity of the deed books, and if necessary, ordering their repair, the legislature was ensuring that the public would have access to and could

by orders drawn by the commissioners on the treasurer of the proper county.

16 P.S. § 9876 (1827), *repealed in part by* 42 P.S. § 20002(a)[108] (1978). We have considered the language in § 9876 and conclude that it does not offer any additional support to appellant's argument over that provided by § 9872.

10. We note that today, in comparison to 1827, "books" are not the primary means of recording documents in many counties in the commonwealth. Since January 1987, all deed records filed in Berks County are made solely on microfilm; that is, there have been no deed books, *qua* books, created in Berks County after December 1986. (N.T. at 18–19).

11. We note that many of the older cases uncovered in our research reveal petitions to the court requesting the creation of new indices of records, or repair of old index listings. *See, e.g., In re Transcription of Perry County Judgment Index Dockets,* 11 Dist. 557 (1902) ("[the] prothonotary ... presented his petition to the court, setting forth that Judgment Index Dockets "G" and "H" were so affected with decay that the records of matter therein contained would be lost unless properly cared for"); *Matter of Reindexing Judgment Dockets,* 1 Dauph. 390 (1898) ("the bar ... presented a petition setting forth several reasons why new judgment indexes were desirable"); *McCommon v. Spong,* 10 Sad. 453, ——, 14 A. 260, 261 (1888) ("a petition was presented to us, signed by the bar of the county, setting forth the great need of an index of the records").

effectively use the deed records that are in the recorder's office.

By enacting section 9872 and creating this procedure, we conclude the legislature intended to grant the court of common pleas a *supervisory* role with respect to the deed records. We find no language within 9872 to support a legislative intent to substitute the court of common pleas for the recorder of deeds as the custodian with the control and responsibility over the deed records.

We find further support for our conclusion by referring to an analogous statute and related case law concerning the indexing of public records. Section 1981 of Title 17, as enacted in 1891, provided

> The court of common pleas of the proper county is hereby authorized and empowered whenever it shall appear advisable on inspection of the books of records and indices belonging to the several offices of ... recorder of deeds of such counties, by its order, to change and alter the mode of preparing and keeping said indices in one or more of said offices and to direct the mode in which said indices shall thereafter be prepared and kept.

17 P.S. § 1981 (1981), *repealed by* Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[770] (1978), *and replaced by* 42 Pa.C.S.A. §§ 323, 912, 4301 (1978). Our supreme court interpreted section 1981 in *Nicely v. Raker*, 250 Pa. 386, 95 A. 556 (1915). *Nicely* involved a dispute between the county controller, the court of common pleas, and the recorder of deeds. Pursuant to section 1981, the court of common pleas ordered the recorder of deeds to enter into a contract to change the mode of indexing deeds in the county. The recorder of deeds accordingly let such a contract. *Id.,* 250 Pa. at 388–89, 95 A. at 556–57. Thereafter, the county controller refused to approve payment under the contract, contending "the court was without authority to direct a reindexing of the records by contract." *Id.,* 250 Pa. at 389, 95 A. at 557. The supreme court affirmed the lower court's judgment approving the contract, noting that section 1981 "vests in the court the sole power of changing or altering

the mode of preparing and keeping the indexes in the several offices of record." *Id.*, 250 Pa. at 390, 95 A. at 557.

Two years later, this court in *Custer v. Glessner,* 68 Pa.Super. 60 (1915), also considered the legislative intent of section 1981 and further explained the practical application of the statute. In *Custer,* this court stated

[a]s we read the statute, it was clearly proper for the learned court below, after having determined there ought to be a change in the method of keeping the records referred to in the statute, to enter an order or decree requiring the same should be done and directing the manner in which the indices were thereafter to be kept. With the making of that order, the power conferred upon the court by the statute would apparently end.... *It was not the purpose of the legislature, as expressed in the language of the act, to take away from the recorder of deeds, for instance, the custody of the records, for the security of which he was responsible by law.*

*Id.*, 68 Pa.Superior Ct. at 62 (emphasis added). As interpreted by this court, the authority and control extended by section 1981 to the court of common pleas was limited to that specifically described in the statute, that is, to order the change and alteration of the mode of preparing and keeping deed indices. Upon the entry of an order pursuant to section 1981, the court's power was thereafter limited to its supervisory role. Section 1981 did not grant the court of common pleas broad custodial powers or control of the records, nor did the legislature intend to restrict or amend the recorder of deeds' authority or responsibility over the deed records in his or her custody.

Section 9872, as relied on by appellant, is a similar grant of limited statutory power to the court of common pleas. As provided by section 9872, the court of common pleas has the discretionary authority to order the rebinding of the deed books that need to be bound anew. However, section 9872 does not grant the court the custody and responsibility for the deed books. Likewise, section 9872 does not grant the court the power to prohibit the lawful

microfilming of deed books. Pursuant to section 9872, the court of common pleas has merely been given the power to order the binding anew of deed books that are in need of rebinding. We find no language in section 9872 suggesting that the legislature intended "to take away from the recorder of deeds, ... the custody of the records." *Custer*, 68 Pa.Super. at 62.

Although we conclude section 9872 does not accord the court of common pleas broad custodial powers over the recorder of deed's records, we emphasize that this holding is "not to be understood [to say] that the court is without power in any event to *supervise* a contract made by the proper officer if it should exhibit an intent to waste or squander the public money." *Custer*, 68 Pa.Super. at 63 (emphasis added). Moreover, we emphasize that the court of common pleas is clearly not without power to enjoin an officer who is improperly restricting access to public records,[12] or who is improperly destroying public records.[13] *Id.; McCommon v. Spong*, 10 Sad. at ——, 14 A. 260, 263 (1888).

Appellant cites *McCommon v. Spong*, 10 Sad. 453, 14 A. 260 (1888), in support of his argument that the court of common pleas has the statutory responsibility for the deed books. In *McCommon*, the court addressed the issue of whether the incumbent recorder of wills had the authority to rescind a contract entered into by order of the court of

**12.** Although appellant suggests in his brief that the deed books are inaccessible to the public after they have been microfilmed, evidence was introduced at the evidentiary hearing, from which the lower court could find that members of the public can access the original deed books, even after they have been debound and photographed. (N.T. at 59–61). The record supports such a finding.

**13.** As we note *infra,* and contrary to appellant's assertion, we agree with the lower court's finding that there has been no demonstration of irreparable destruction of the deed records. Therefore, appellant's argument that an injunction should be granted to prohibit further irreparable destruction of the deed books because of the cutting and debinding is without merit. Where appellant cannot show irreparable harm, an injunction will not be awarded. *Ogontz Controls,* 346 Pa.Super. at 256, 499 A.2d at 595.

common pleas pursuant to section 9872.[14] *Id.* at ——, 14 A. at 260–61. The court of common pleas, in response to a petition from the bar, ordered the creation of indices for the records held by the recorder of wills. The recorder of wills, Spong, was chosen to undertake such a task, and he began the work. At the next general election, a new recorder of wills, McCommon, was elected, who then refused to permit Spong to continue with the indexing contract. *Id.* at ——, 14 A. at 261. McCommon argued that he was entitled to any profits ascribable to the office of the recorder of wills, and therefore, the indexing contract should be given to him. The trial court, and the supreme court on appeal, upheld the original contract with Spong. *Id.* at ——, 14 A. at 262.

The trial court's opinion, adopted by the supreme court, explained that the enactment of section 9872 "imposed upon the courts the power and duty of directing the making of full and complete indexes, [and the legislature] certainly contemplated that [the courts] should have the power to intrust the labor to competent persons.... It could not have been intended by the legislature that the courts were compelled to commit it only to the person who happened to be the incumbent in the office." *McCommon,* 10 Sad. at ——, 14 A. at 261. We do not find *McCommon* to be apposite.

The court in *McCommon* was specifically addressing a dispute between the recorder of wills and the former recorder of wills who was working under a court order to create new indices for the will record books. The former recorder, Spong, was working to create new record indices, under a court order. The court of common pleas had the authority, pursuant to section 9872, to order the creation of the new indices. Once ordered and contracted, it was not within a later elected recorder of wills' authority to modify the court order.

14. The statute analyzed in *McCommon* is referred to as P.L. 154, § 4, Act of 1827, March 29. As noted above, P.L. 154, § 4 was later repromulgated as 16 P.S. § 9872.

*McCommon* is inapposite to the case at bar. The instant case does not involve an order and an attempt to modify or alter it. More importantly, we do not read *McCommon* to hold that the court of common pleas, pursuant to section 9872, has the power and authority to prohibit the recorder of deeds from continuing a valid contract to reproduce the county deed books onto microfilm, where the microfilming process does not destroy the deed records.

Judge Schaeffer also contends the Berks County contract irreparably harms the court of common pleas by eroding and undermining public confidence in the court. As argued by appellant, under 16 P.S. § 9872 the court is statutorily granted the responsibility to protect the county deed books. Therefore, the debinding of the deed books, without the express approval or knowledge of the court, erodes public confidence in the power of the court. We find appellant's argument to be completely without support. Not only has appellant presented no evidence in support of his erosion of public confidence argument, but, as we concluded above, there is no merit to his argument that the court of common pleas has, pursuant to section 9872, the custodial authority or responsibility over the deed records. We specifically have found that the recorder of deeds is the deed records custodian with the responsibility to protect and safeguard the deed records.

In his brief, appellant further argues the debinding of the deed books has irreparably destroyed the deed books and threatens to irreparably destroy the remaining deed books if the microfilming contract is permitted to continue. Appellant's Brief, at 13–15. As argued by Judge Schaeffer, the debinding of the deed books for the microfilming process "destroys public records" because the deed books are not accessible as "books" after being debound. *Id.*

■ The trial court held that no evidence was presented establishing that the recorder of deeds, "or any one acting on her behalf," was in any sense unlawfully destroying public records. Trial Court Opinion, at 24. Moreover, the court "specifically found from the evidence presented that

there was nothing that could be construed as a cutting or destruction of any of the volumes contained in the [appellee's] office." *Id.* After carefully and thoroughly reviewing the record and all relevant statutory language, we agree with the lower court.

We note that no evidence was introduced that remotely suggests the deed records, or wording on the pages has been or will be destroyed, cut off, torn or mutilated. The only evidence presented was that the pages from the deed books were removed, by cutting or other means, from the binding, then photographed, placed loose back into the binding, and finally wrapped in brown paper. (N.T. 25–37). Without more, we can not conclude that the above debinding and microfilming process undertaken pursuant to a valid county contract, irreparably is destroying the Berks County deed books.[15] We find that under the applicable law, the debinding of the Berks County deed books, pursuant to a proper lawful contract, to accommodate the microfilming process, does not constitute a destruction of the deed or public records.[16]

15. Appellant also argues that the County Records Committee Manual states that deed books, *qua* books, must be retained permanently. Appellant's Brief, at 9–10 (citing the County Records Committee Manual, chap. 6B, at 6–B–1). While the table noted by appellant does state deed books and grantor and grantee indices must be "retained permanently," we refer appellant to chapter 1 of the Manual, paragraph 4(a), which provides that "[t]he fact that information is created and stored electronically or on microfilm rather than on paper has no bearing on its retention status." We conclude that the rule to retain deed books permanently does not apply only to deed books consisting of paper and bindings, but applies to all deed records, whether electronically created, or microfilmed, or on paper.

16. Although we find in this case there has been no demonstration of a destruction of deed records or books, we emphasize that this decision is not to be read as an approval of the destruction or disposal of historically valuable documents. We acknowledge and completely support the retention of records solely for their value as historical records. We note that the County Records Committee, created pursuant to 16 P.S. §§ 13001–06 (1963), has stated that the establishment of the records disposition program was, in part, to "ensure the preservation of records of permanent value." County Records Committee Manual, chap. 1A, para. 3(b), at 1–A–2. Moreover, we note that the County Records Committee has set mandatory schedules, to be ad-

In summary, we conclude that appellant has not established any form of immediate and irreparable harm caused by the Berks County microfilming contract. We find that the debinding of the county deed books as part of the lawful microfilming contract does not constitute a destruction of public records. Moreover, we find that the debinding process does not irreparably harm the court of common pleas by precluding the court from inspecting the deed books and ordering the binding anew of any books that, in the court's opinion, need to be rebound. Finally, we conclude that the debinding of the Berks County deed books without the approval of the court of common pleas does not irreparably harm the court by eroding public confidence in the court.

The denial of injunctive relief is affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

Under ordinary circumstances, the majority would probably be correct when it opines that the issue of standing was not raised and therefore is waived under *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). However, this case does not present ordinary circumstances. Indeed, it is a rare, if not an exquisitely unique, event when a judge (not as an individual, private citizen) on his own initiative institutes litigation directed toward another public official or entity to redress a perceived public wrong. I am not here concerned, let it be said, with the correctness of Judge Schaeffer's assessment of the substance of his complaint; rather, what is bothersome is the notion that it is assumed that his *sua sponte* invocation of the power of the court is condoned simply because the issue was not raised heretofore as though the judge was a common litigant.

hered to by all county officers when disposing of any county records. *See Id.*

We are dealing here not with a routine equity case between ordinary citizens of the Commonwealth to whom the laws and rules of our judicial system apply equally. This is a special factual scenario requiring a special analysis not necessary for the resolution of common disputes. We, as judges of the Superior Court, an intermediary appellate step on the way to the Supreme Court, the ultimate, constitutionally ordained supervisor of our unified judicial system, have an inherent responsibility to scrutinize with the utmost care those uncommon cases involving a judge in his public role as a litigant.

While this case does not present facts or a controversy that would arouse anyone except the participants, it nevertheless has far-flung implications. Thus, I conclude, that this special case demands special treatment to ensure its correctness.

My analysis is that the result is not correct because Judge Schaeffer, without at least the majority approval of his court, had no authority to bring his action. The statute upon which Judge Schaeffer based his request for injunctive relief is 16 P.S. § 9872, which, in pertinent part, provides:

At least once in each and every year, * * * it shall be the duty of each of the aforesaid ... recorders of deeds, ... in the several counties of this commonwealth, to submit the books of records belonging to their several offices to the inspection of *the judges of the court of common pleas* of the proper county; and it shall be the duty of *the said court* to order and direct such of the said books, as in *their* opinion may require it, to be bound anew; and also, in all cases where the same may be wanting, to order and direct full and complete indexes of the matters contained in said books to be made and prepared, within such time as *the said court* may think reasonable. (emphasis added)

Nothing in the record indicates that President Judge Forrest Schaeffer was ever authorized by his colleagues in the Court of Common Pleas of Berks County to file this

578

suit. Nor is President Judge Schaeffer granted the power to take such an action on behalf of the Berks County Court of Common Pleas. See 42 Pa.C.S.A. § 325(e)(1). As 16 P.S. § 9872 makes abundantly clear, it is the Court of Common Pleas of Berks County which has the power to take action under this statute, not President Judge Schaeffer acting alone. I would further comment that such authority, under our unified system, could only be derived from the prior advice and consent of our Supreme Court.

Accordingly, I would quash this appeal.