Credit Alliance Corporation et al., Appellants, *v.* Philadelphia Minit-Man Car Wash Corporation.

368

Argued January 9, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Steven M. Dranoff,* with him *Oscar Spivack* and *Spivack & Dranoff,* for appellants.

*Frank A. Bedford, III,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 16, 1973:
Appellee Herbert A. Ottey (Ottey) on December 30, 1968, entered into an agreement with appellee Philadelphia Minit-Man Car Wash Corporation (Minit-Man) for the purchase of car-wash equipment. Minit-Man assigned its interest in the agreement to appellant Han-

na Industries (Hanna), which in turn assigned its interest to appellant Credit Alliance Corporation (Credit Alliance). Concurrently with the execution of the aforementioned agreement, Ottey, as debtor and buyer, executed a financing statement on the equipment in favor of the secured party and seller, Minit-Man. The financing statement was assigned to Hanna and then to Credit Alliance, and the statement and assignments were properly filed and recorded in Montgomery County. At approximately the same time as the execution of the sales agreement and prior to the execution of the financing statement, Ottey took possession of the car-wash equipment and installed it at Jenkintown, Pennsylvania, on premises leased to Ottey by Minit-Man, the prime lessee of the premises. Ottey then assigned all his right, title and interest in the lease to Credit Alliance. Minit-Man consented to the assignment. Hanna and Credit Alliance permitted the installation of the car-wash equipment on the demised premises in reliance upon Paragraph 37 of the lease agreement, which provided: "37. Lessee may install new additional equipment and make additions, alterations and improvements to the building and present equipment subject to the prior written approval of Lessor which shall not be unreasonably withheld and subject to the filing of waiver of mechanics' liens prior to the commencement of work. Lessor agrees to execute a Landlord's Waiver in connection with any new, additional equipment installed at the inception of this lease."

Later, Minit-Man, without the knowledge and approval of Hanna and Credit Alliance, changed the landlord's waiver by adding conditions not contemplated by the lease agreement, which, if effectuated, would deny appellants the protection promised in the original waiver, and in Paragraph 37 of the lease agreement.

On or about August 1, 1970, Ottey abandoned the car-wash and equipment and defaulted in the payments of installments due under the agreement with Minit-Man which had been assigned to Credit Alliance. At that time, there was due and owing to Credit Alliance, under the agreement, the sum of $54,319.96. Subsequent to the default by Ottey, Credit Alliance advised Minit-Man that Minit-Man could operate the equipment only upon payment of the installments due, and if payments were not made, the equipment would be removed. Minit-Man refused to make any payments and refused to permit the equipment to be removed. Instead, Minit-Man sold or leased the equipment to appellees Richard Sheehan and Chester Fazio, who continued to operate the car-wash.

Hanna and Credit Alliance filed a complaint in equity, later amended, alleging fraud on the part of Minit-Man, in changing the landlord's waiver, and seeking a preliminary injunction against appellees. The injunction sought was to prevent appellees from interfering with the removal of the car-wash equipment and the exercise by Hanna and Credit Alliance of their rights as secured parties in the equipment. The complaint further requested that a receiver be appointed to take charge of the equipment and to operate the car-wash business and that the court require appellees to account for funds derived from the operation of the car-wash.

After a hearing on the amended complaint, the chancellor denied all relief sought by appellants, and this appeal followed.

Appellants argue that the chancellor erred in refusing to grant a preliminary injunction and in refusing to appoint a receiver. In *Pa. P.U.C. v. Alleg. Co. Port Auth.*, 433 Pa. 495, 499, 252 A. 2d 367 (1969), we stated that: "It has long been the rule in this Court that on an appeal from a decree, whether granting or denying

a preliminary injunction, we will not inquire into the merits of the controversy, but will, instead, examine the record only to determine if there were any apparently reasonable grounds for the actions of the court below. [Citing cases.] Moreover, we will not 'pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly not applicable [citing cases].' "

With the above rule in mind, we have examined the record and have found that there were in fact two independent reasons for the action of the chancellor. For one thing, appellants had full and adequate remedies at law. They could have brought an action in replevin to secure their equipment or an action in assumpsit for money damages. Appellants allege that a remedy other than preliminary injunction would be tedious and expensive. However, the tediousness or expense of other remedies certainly would not bring rise to a preliminary injunction.

Secondly, it is settled law that the granting of a preliminary injunction is a harsh remedy and should only be issued when the essential prerequisites are met. As we said in *Albee Homes, Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 181, 207 A. 2d 768 (1965) : ". . . the essential prerequisites for the issuance of a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct."

In the instant case, there was no showing of an urgent necessity to avoid immediate and irreparable harm, which could not be repaired under any standard of compensation. Appellees have already agreed that

they will not sell or dispose of the equipment, and that they will keep an accounting of what is transpiring in the car-wash business until the issues are finally resolved. These assurances by appellees clearly militate against a finding of clear and immediate irreparable harm ensuing to appellants by the denial of the preliminary injunction.

Appellants also argue that the chancellor erred in failing to appoint a receiver for the car-wash operation. However, a receiver will not be appointed unless it appears that the appointment is necessary to save the property from injury or threatened loss or dissipation. See *Mintzer v. Arthur L. Wright & Co.*, 263 F. 2d 823 (3d Cir. 1959). Nor will one be appointed where there is another safe, expedient, adequate and less drastic remedy at law. See *McDougall v. Hunt. & Br. T. R. & C. Co.*, 294 Pa. 108, 143 A. 574 (1928). Since appellees have consented not to dispose of the equipment or harm it until the issues in the action are finally resolved, this case does not warrant the appointment of a receiver.

Decree affirmed. The case is remanded to the Court of Common Pleas of Montgomery County for the resolution of other issues raised by appellants in their complaint.

Costs to be borne by appellants.