530 A.2d 1357

**BLAIR DESIGN AND CONSTRUCTION CO., INC.,**

v.

**Michael J. KALIMON, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 21, 1987.

Filed Sept. 8, 1987.

Kurt A. Miller, Pittsburgh, for appellant.

John W. Murtagh, Jr., Pittsburgh, for appellee.

Before BROSKY, DEL SOLE and CERCONE, JJ.

DEL SOLE, Judge:

Before us is an appeal from the Order entered May 2, 1986. The Order consisted of a preliminary injunction prohibiting Appellant from conducting business in violation of a restrictive covenant he entered into with Appellee pursuant to an employment contract.

By his brief, Appellant raises the following issues:

1. Can a restrictive covenant which specifically prohibits a former employee only from dealing with customers named on a list attached to the employment agreement be construed to prohibit the former employee from dealing with customers not named on the list?;

2. Is the non-competition covenant involved in this action unenforceable because, as interpreted and enforced by the court below, its prohibitions are broader than necessary to protect the former employee's interests?;

3. Is the non-competition covenant involved in this action unenforceable because it is not reasonably limited in duration?; and,

4. Is the injunction issued by the lower court overbroad and indefinite?

The underlying facts of this case may be briefly summarized as follows. Appellee is in the business of retail store construction and remodeling. In December of 1983, Appellant was hired by Appellee to work as a project manager. Subsequent to commencement of work, Appellant signed an employment agreement which contained the following provisions:

DISCLOSURE OF INFORMATION: The Employee recognizes and acknowledges that *the list of the Employee's [sic] customers which is attached hereto, and made a part hereof and designated Exhibit "A", and any new customers obtained during his employment with Employer,* constitute a valuable, special and unique assets [sic] of the Employer's business. The Employer [sic] further recognizes and acknowledges that the Employer's customers are not located in any single geographical area but are situated throughout the entire United States of America. The Employee will not, during or after the terms of his employment, disclose the list of the Employer's customers or any part thereof to any person, firm, corporation, association or other entity for any reason or purpose whatsoever. In the event of a breach or threaten to breach of the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the employee from disclosing, in whole or part, has been disclosed or is threatened to be disclosed. Nothing herein shall be construed as prohibiting the Employer from pursuing any other remedies available to the Employer from such breach or threatened breach, including the recovery of damages from the Employee.

RESTRICTIVE COVENANT: For a period of three (3) years after the termination of this Agreement for any reason, the Employee will not directly or indirectly, own,

manage, operate, control, by [sic] employed by, participate in, or be connected in any manner with the ownership management, operation or control of any business similar to the type of business conducted by the Employer at the time of termination of this Agreement, which deals in any manner or solicits any business *from customers named on the list referred to in the immediately preceding paragraph.* In the event of any actual or threatened breach by the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the Employee from owning, managing, operating, controlling, being employed by, participating in, or being in any so connected with any business similar to the type of business conducted by the Employer at the time of termination. Nothing herein stated shall be construed as prohibiting the Employer from prusuing [sic] any other remedies available to the employer including the recovery of the damages from the employee. (Emphasis supplied).

In February of 1985, Appellant terminated his employment with Appellee so that he could pursue a career in the painting business. However, this plan did not transpire; therefore, Appellant entered the remodeling business as an independent contractor. Appellant proceeded to either bid upon, or perform construction work on, certain Corn Dog, Hot Sam Pretzel, and Original Cookie stores. Although these companies had been customers of Appellee, they did not appear on the customer list designated as Exhibit "A" in the employment contract. Likewise, they were not new customers obtained during Appellant's tenure with Appellee. Despite protests received by Appellee, Appellant continued to conduct business with these clients.

Appellee thereafter filed a complaint in equity requesting preliminary and permanent injunctive relief. On February 25, 1986, following a hearing on this matter, the Honorable Maurice Louik denied Appellee's request for a preliminary injunction. Upon receiving information that Appellant had performed work for, and was continuing to solicit work from, the Original Cookie store chain, Appellee filed anoth-

er complaint in equity. A preliminary injunction hearing was scheduled to be held before the Honorable I. Martin Wekselman on May 2, 1986. Following arguments by both parties, Judge Wekselman granted Appellee's request for a preliminary injunction. The hearing court fashioned the Order, *sub judice*, which provides:

Michael J. Kalimon ... is preliminarily enjoined from doing business with customers of the plaintiff Blair Design and Construction Company, Inc. in violation of the restrictive covenants contained in the contract between the parties, or otherwise interfering with the plaintiff's relationship with plaintiff's customers in any manner or method whatsoever.

This timely interlocutory appeal follows. *See* Pa.R.A.P. 311(a)(4) (an appeal may be taken as of right for an order granting an injunction).

■ Preliminarily, we discuss our appellate scope of review. A preliminary injunction is an extraordinary remedy which should be granted only after careful deliberation by the hearing court has resulted in the conclusion that such relief is a necessity. *Beck Computing Services, Inc. v. Anderson*, 362 Pa.Super. 505, 508, 524 A.2d 990, 991 (1987). Prior to granting a preliminary injunction, four essential prerequisites of law must be found by the hearing court to coalesce:

immediate and irreparable harm which could not be compensated by damages; the greater injury would result by refusing it than by granting it; that it would properly restore parties to their status as existing immediately prior to the alleged wrongful conduct; and that the activity sought to be restrained is actionable and that an injunction is reasonably suited to abate such activity.

*Id.*, 362 Pa.Superior Ct. at 508, 524 A.2d at 991–992. *See New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 392 A.2d 1383, 1385 (1978).

■ Our scope of review in these matters is narrowly defined. It is not the function of this court to explore the merits of the controversy. Rather, our examination of the

record must be confined to whether or not there exists any apparently reasonable grounds for the hearing court's actions. *Ogontz Controls Co. v. Pirkle*, 346 Pa.Super. 253, 257, 499 A.2d 593, 595 (1985). Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the chancellor. *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 600, 351 A.2d 250, 257 (1976).

In keeping with our appellate scope of review, we shall refrain from addressing Appellant's contentions with respect to the merits of the covenant. Such determinations are reserved to the chancellor in equity. However, it is within the purview of this court to discern whether the hearing court acted reasonably in enforcing the covenant and in applying relevant principles of law.

We have examined the record and find that the hearing court acted reasonably in enforcing the covenant. Testimony elicited during the hearing demonstrated that the restrictive covenant was needed to protect Appellee's legitimate business interests. Appellee's associate explained that it took many years to develop Appellee's client list. This list was regarded as Appellee's most important asset. During the hearing, the Appellee adequately described a course of conduct taken by Appellant which threatened Appellee's interests in maintaining its exclusive clientele list. Thus, the enforcement of an anticompetition agreement that was to prevent this from occurring was an appropriate remedy.

Furthermore, there is not indication that the hearing court either relied upon palpably erroneous law or misconstrued applicable law. Equitable enforcement of restrictive covenants is permitted when they are incident to an employment relation between the agreement's parties, they are reasonably necessary for the protection of the employer, and they are reasonably limited in duration and geographic extent. *Sidco supra*, 465 Pa. at 591, 351 A.2d at 252. The record demonstrates that the restrictive covenant was signed by both parties incident to Appellant's contract of

employment. The clause, as pointed out, *supra*, was written expressly to protect Appellee from business competition by former employees. Further, the terms of the covenant did not manifest unreasonable limitations in either duration or geographic extent.

Accordingly, we conclude that the hearing judge's decision to uphold the restrictive covenant was in accordance with the legal principles established in this Commonwealth.

 Next, we must determine whether the hearing court acted reasonably in fashioning the preliminary injunction. The breadth of the injunction was confined to business relations in violation of the restrictive covenant entered into by the parties. By his brief, Appellant argues that the preliminary injunction is overbroad as applied to Corn Dog, Hot Sam Pretzel, and Original Cookie, which are Appellee's customers. Appellant relies on the fact that these stores were not specified on the customer list attached to the employment contract and had already been Appellee's clients prior to, and during, Appellant's tenure. Arguably, these customers fall within a gray area of the restrictive covenant inasmuch as they are not listed as Appellee's customers or were acquired after Appellant was hired. Nonetheless, the record is replete with testimony to the effect that Appellant knew that Corn Dog, Hot Sam Pretzel, and Original Cookie were Appellee's customers at the time he was employed by Appellee. Moreover, Appellant was even assigned to work on these accounts during his employment with Appellee. (N.T. 31, 32, 40).

From these undisputed facts, we conclude that the hearing court acted reasonably in holding that Appellant's knowledge of the status of these stores as Appellee's customers established grounds on which to restrain Appellant from dealing with Corn Dog, Hot Sam Pretzel, and Original Cookie under the restrictive covenant.

We are mindful that a chancellor may decide later, upon final hearing, that the restrictive covenant was improperly construed. A determination of that nature would be proper by virtue of the fact that it is the chancellor's function to

address the merits of the case. If, for any reason, the chancellor should find error with the preliminary injunction, Appellant would not be without recourse. It was established during the preliminary injunction hearing that bond would be set at $25,000.00 in the event a chancellor, by final decree, disposes of the instant case in a contrary manner.

Accordingly, we affirm the granting of the preliminary injunction.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I must respectfully dissent from the majority's affirmance of the preliminary injunction fashioned below. I concur in the majority's finding that the hearing court had reasonable grounds for the granting of an injunction enforcing the restrictive covenant. However, I feel that appellant's fourth issue on appeal, challenging the *breadth* of the injunction, has merit.

It is well-established proposition that the scope of appellate review with respect to the grant, refusal, or continuance of a preliminary injunction, is very limited. We may only determine if there were any apparently reasonable grounds for the actions of the court below; we may not further consider the merits of the case, or pass upon the reasons for or against such action, unless it is plain that no such grounds existed, or that the rules of law relied upon were palpably wrong or clearly inapplicable. *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250, 257 (1976); *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.*, 450 Pa. 367, 301 A.2d 816, 818 (1973); *Zebra v. Pittsburgh School District*, 449 Pa. 432, 296 A.2d 748, 750 (1972). Moreover, to determine if reasonable grounds existed for the action of the hearing court, an appellate court must review the evidence below to discern if the three prerequisites for the grant of a preliminary injunction were present: a clear right to relief in the plaintiff, an immediate need for relief, and the danger of irreparable injury to the

plaintiff in the absence of an injunction. *Sidco,* supra; *Credit,* supra; *Zebra,* supra.

With this in mind, it is clear that we may not reach the merits of the covenant itself unless we find that the record below is totally devoid of any evidence to support the court's decision to enforce the covenant, or that the court patently misapplied the law on post-employment restraints. Any decision on the merits of the covenant, with respect to its breadth in terms of proscribed activity, geographical area, and duration, are reserved to the chancellor in equity.

Preliminary review of the record indicates that the hearing court's findings were not totally unsupported by the evidence, or the result of misapplied law.

Appellee Blair presented testimony as to why the anti-competitive clauses in appellant's employment agreement were needed to protect the legitimate business interests of Blair, and that appellant was aware that he was prohibited from soliciting business from Blair's customers for a period of three years. I question the hearing court's interpretation of the term "customers" as it relates to the agreement's prohibitions, and the ultimate chancellor in equity may find fault with the court's broad reading of the term. However, I cannot deem this interpretation to be totally devoid of evidentiary support, or patently unreasonable.

Furthermore, I cannot aver that the hearing court relied upon palpably inapplicable law, or committed clear error in its reading of the law. It is not unreasonable as a matter of law for an employer to assert a protectible interest in the goodwill it has developed, by virtue of effort and expenditures, over a period of time, as to customers acquired prior to an employee's tenure, as well as during his employment. *Sidco,* supra, p. 254. Furthermore, a three year prohibition is not, per se, illegal, if related to the employer's legitimate business interests. See Restatement of Contracts, Second, § 188, Comment d. Hence, while a chancellor in equity may ultimately decide to limit the scope of the prohibition in terms of customers involved and time span, the hearing

court did not uphold any terms in the covenant which were clearly contrary to law.

As such, I do not feel that any analysis of the first three contentions on appeal, with respect to the actual merits of the covenant, is appropriate. This leaves appellant's fourth contention: in light of the three prerequisites for a preliminary injunction, is the injunction overbroad or indefinite?

With respect to the latter two criteria, a need for immediate relief and the possibility of irreparable harm, I am in accord with the hearing court that the testimony presented supports a finding that appellant's actions constituted both immediate and irreparable harm. Clearly, appellant had been submitting bids on projects involving Corn Dog, Hot Sam Pretzel, and Original Cookie stores. As a further matter, appellant did not indicate an intention to blanketly refrain from submitting bids on jobs involving Blair customers apart from these three chains. The threatened loss of goodwill to Blair alone, as a result of appellant's actions, mandated an immediate preliminary determination of the protection afforded Blair by the covenant, and an injunction enforcing that protection. It is only with respect to the initial criterion, the clarity of Blair's right to relief as to all past and present customers, that I discern a problem of overbreadth with the injunction as issued.

The injunction fashioned by the hearing court enjoins appellant from:

> ...doing business with customers of the plaintiff Blair Design and Construction Company, Inc. in violation of the restrictive covenants ..., or otherwise interfering with the plaintiff's relationships with plaintiff's customers in any manner or method whatsoever....

The hearing court did not find the omission of Corn Dog, Hot Sam Pretzel, and Original Cookie, from the customer list to be problematic in its determination of the appropriate prohibition to be issued against appellant. Clearly, the hearing court found appellant's subjective knowledge as to the status of these three chains as customers of Blair to be some evidence that appellant was well aware of the identity

of Blair's customers, and consequently relied upon appellant's knowledge, in addition to the covenant itself, to fashion an injunction barring appellant from contact with all past and present customers of Blair, including these three. The majority, moreover, expressly holds that the hearing court acted reasonably in placing reliance upon appellant's subjective knowledge when it fashioned an injunction restraining appellant from further dealings with Corn Dog, Hot Sam Pretzel, and Original Cookie. This, however, cannot be deemed the clear and indisputable intent of the parties from the language of the covenant. The covenant specifically refers to a prohibition with respect to customers on the list, and new customers acquired during appellant's employment. While a chancellor in equity may determine at a later date, that the covenant was intended to include customers *not* specified on the list, it cannot be said at this time that Blair has a *clear right* to restrain appellant from dealing with, and submitting bids to, omitted customers, such as Corn Dog, Hot Sam Pretzel, and Original Cookie. Even the majority concedes that the omitted customers fall within a "gray area of the restrictive covenant." Taken at face value, the hearing court's restraint is, in reality, a resolution on the merits of the interpretation question: it restrains appellant from dealing with Blair customers not specified on the list, based upon its interpretation of the intent behind the covenant. This, clearly, was in excess of the hearing court's function. In affirming the hearing court's restraint as to omitted customers such as Corn Dog, Hot Sam Pretzel, and Original Cookie, the majority places its imprimatur upon the hearing court's usurpation of the function of the chancellor in equity. I, however, cannot condone the hearing court's impropriety, and would hold the injunction to be overbroad in restraining appellant from further dealings with omitted customers, such as these three.

With respect to customers on the list, as well as new customers acquired during appellant's tenure, I feel that the hearing court's restraint was appropriate. If nothing else, Blair is clearly entitled to relief with respect to them.

My difficulty here, however, results from the hearing court's decision to issue a blanket restraint. Because the court below took the position that all Blair customers were "off limits" to appellant, it did not make any factual findings as to what companies became Blair customers after appellant was hired.

In light of the foregoing, I would modify the preliminary injunction, and remand the matter for further proceedings as follows: I would vacate the preliminary injunction with respect to those Blair customers that were already customers at the commencement of appellant's employment, but who were omitted from the customer list attached to the employment agreement. I would affirm the injunction as to those customers specifically named on the customer list, as well as to those customers who were acquired by Blair during appellant's period of employment, whose names would be determined by further hearing below.