# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carlino East Brandywine, L.P. | : | |
| | : | |
| v. | : | No. 367 C.D. 2022 |
| | : | |
| East Brandywine Township, Jason R. | : | |
| Winters, George Scherbak, | : | |
| Brandywine Village Associates, L.P., | : | |
| L&R Partnership, LLC, Leonard G. | : | |
| Blair, individually and as general | : | |
| partner of L&R Partnership, Richard | : | |
| J. Blair, individually and as general | : | |
| partner of L&R Partnership, John R. | : | |
| Cropper, individually and as general | : | |
| partner of L&R Partnership, and John | : | |
| Doe Corporations and Individuals | : | |
| | : | |
| | : | |
| Appeal of: Brandywine Village | : | |
| Associates, L.P., L&R Partnership, | : | |
| LLC, Leonard G. Blair, Richard J. | : | |
| Blair, and John R. Cropper | : | Submitted: June 7, 2023 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                               FILED: July 11, 2023

      Appellants Brandywine Village Associates, L.P. (Brandywine); L&R

Partnership, LLC (L&R); Leonard G. Blair, Richard J. Blair; and John R. Cropper

(collectively Appellants) appeal from the Court of Common Pleas of Chester

C o u n (Common Pleas) orders, respectively filed on April 4, 2022, and April 11, 2022,[1] granting Appellee C a r l i n o E a s t B (Carlino) Emergency , L . P . Petition for Preliminary and Permanent Injunctive Relief (Emergency Petition). Through these orders, Common Pleas ruled that a settlement agreement between East Brandywine Township (Township), L&R, the Blairs, and Cropper was illegal, invalidated the T o w n s transfer of land through that agreement to Cropper and L&R, and ordered the Township to undo any steps it had taken to comply with the agreement. *See* R.R. at 628a-29a. Upon review, we conclude that Common Pleas improperly granted relief beyond that which could be deemed preliminary in nature and, accordingly, vacate C o m m o n P l e a s ' o r d e r s

## I. Background

The history behind this matter is rather baroque and, as such, necessitates a lengthy discussion of the events that eventually gave rise to this specific appeal.[2] Carlino owns a roughly 10-acre lot, which has mixed-use commercial zoning and is

---

[1] The April 11, 2022 order served to correct typographical errors that were present in the April 4, 2022 order. *See* Reproduced Record (R.R.) at 624a-29a.

[2] The long-running dispute between the parties to this matter has birthed a multitude of interrelated legal actions and administrative appeals, of which this one is but the most recent. *See Brandywine Vill. Assocs., LP v. E. Btcpf{y kpg''Vy r0Df0qh'Uwrøts* (Pa. Cmwlth., No. 499 C.D. 2020, filed July 2, 2021), 2021 WL 3046662, *reargument denied* (Sept. 9, 2021), *appeal denied*, 275 A.3d 957 (Pa. 2022) (*Brandywine V*); *Brandywine Vill. Assocs. v. E. Brandywine Twp.* (E.D. Pa. No. CV 20-2225, filed Sept. 14, 2020), 2020 WL 5517353 (*Brandywine IV*); *Condemnation of Fee Simple Title to 0.069 Acres of Vacant Land & Certain Easements Owned by Brandywine Vill. Assocs.* (Pa. Cmwlth., No. 1409 C.D. 2017, filed Jul. 2, 2018), 2018 WL 3213113 (*Brandywine III*); *Brandywine Vill. Assocs. v0G0Dtcpf{y kpg''Vy r0Df0qh'Uwrørs* (Pa. Cmwlth., No. 1149 C.D. 2017, filed Apr. 19, 2018), 2018 WL 1865792 (*Brandywine II*); *Brandywine Vill. Assocs. v. E. Brandywine Twp. Bd. of Supørs* (Pa. Cmwlth., No. 164 C.D. 2017, filed Jan. 5, 2018), 2018 WL 296999 (*Brandywine I*); *see also* R.R. at 1043a-45a (listing a number of other lawsuits and administrative matters that, as of December 2021, were still pending). We direct interested readers to peruse the opinions cited in this footnote if they desire more granular background detail than that which we offer *infra*.

located at 1279 Horseshoe Pike in the Township (Property). *Id.* at 19a. To the southeast of the Property is a parcel of land that is owned by Brandywine and is currently occupied by a shopping center that includes, as one of its tenants, a grocery store that is operated by Cropper. *Id.* at 19a, 262a, 767a-68a, 783a-84a, 810a. To the north of the Property is an undeveloped lot, which is jointly owned by Cropper and L&R. *Id.* at 20a, 768a, 783a-85a, 809a. Carlino desires to develop the Property by building a mixed-use shopping center thereon, which, as currently envisioned, would contain a supermarket. *Id.* at 19a, 262a. Thus, were Carlino to successfully attain this goal, its new shopping center would directly compete with the one owned by Brandywine and, more specifically, with Cropper's grocery store. *See id.* at 13a.

On August 10, 2014, Carlino entered into a memorandum of understanding with the Township. By virtue of that memorandum, the Township agreed to condemn portions of Brandywine's and L&R's respective parcels, as well as to authorize Carlino to build a Township-mandated connector road once Carlino had secured the other necessary permits and approvals, which would link Horseshoe Pike and nearby North Guthriesville Road across the condemned land. *Id.* at 757a, 760a-62a.[3] Concomitantly, Carlino promised, in relevant part, to cover the assessed

---

[3] Per the memorandum of understanding:

> In order to support existing volumes of traffic and traffic projected to be generated by new growth and development in the Township, the Township has an interest in creating a new public road connecting Horseshoe Pike to North Guthriesville Road[.] . . . Th[is] c]onnector [r]oad would traverse the eastern side of the . . . Property and extend northward through [Brandywine] to construct the [c]onnector [r]oad, a portion of the . . . Property would need to be used for the right-of-way and the construction of the [c]onnector [r]oad and related improvements.[] In addition, in order to construct the [c]onnector [r]oad and storm water management facilities necessary for the [c]onnector [r]oad, a portion

**(Footnote continued on next page…)**

amount of just compensation for the condemnation, shoulder the cost of building the road, and indemnify the Township against any litigation that resulted from this taking. *Id.* at 757a-61a. The Township's Board of Supervisors (Board) then passed a resolution on August 20, 2014, approving the memorandum of understanding, followed by a second resolution on October 2, 2014, which directed the Township to acquire that land via condemnation. *Id.* at 803a-07a. The Township then filed a declaration of taking on November 17, 2014, for 1.93 acres of tract Brandywine and .069 acres of Cropper. *See id.* at 872a-805a.[4] In response, L&R's Brandywine, Cropper, and L&R unsuccessfully challenged the condemnation through preliminary objections that were overruled by Common Pleas, as well as through a subsequent appeal to our Court, which we disposed of by upholding Common Pleas. *See Brandywine III*, slip op. at 17-28, 2018 WL 3213113, at *7-*12.

With the taking secured, Carlino then submitted a land development plan to the Township on July 3, 2018, which showed, in detail, the proposed shopping center and connector road. *See* R.R. at 22a, 853a. After several revisions, the plan was conditionally approved by the Board on June 6, 2019. *Id.* at 23a, 265a. Brandywine and L&R then appealed this conditional approval to Common Pleas. While that appeal was pending, and in line with the conditions imposed by the Board, Carlino and the Township signed two additional agreements, one for development and the

of the [land owned by Cropper and L&R] and [a] right-of-way over a small area of . . . Brandywine['s parcel] . . . would need to be acquired.

R.R. at 755a. In other words, the condemnation of Cropper, L&R, and Brandywine's land was necessitated by ensuring that Carlino construct the connector road.

[4] The declaration also established a temporary grading easement over .26 acres of Brandywine's tract. R.R. at 783a.

4

other for stormwater management facilities operation and maintenance, on December 23, 2019. *See id.* at 855a-914a. Thereafter, on April 17, 2020, Common Pleas upheld the Board's conditional approval of Carlino['s], prompting Brandywine and L&R to appeal that ruling to our Court. *See Brandywine V*, slip op. at 9, 2021 WL 3046662, at *5.

It was at this juncture that the Township sharply changed tact and began trying to impede Carlino's efforts to develop the Property.[5] On June 25, 2020, the Commonwealth of Pennsylvania Department of Transportation ("PennDOT") approved Carlino's request for a high[way occupancy permit (HOP)] authorizing Carlino to make improvements to both Horseshoe Pike and North Guthriesville Road as part of the connector road project. Common Pleas Op., 6/27/22, at 6. Appellants then intervened before PennDOT and appealed its approval of the HOP. *Id.* at 6-7. In October 2020, the Township itself intervened in Appellants' HOP appeal. Despite its previous acts and approvals regarding Carlino's development project, the Township opposed. *Id.* at 8; *see* R.R. at 956a-57a, 959a-62a. Shortly thereafter, on December 7, 2020, the Board filed an appellate brief with our Court in *Brandywine V*, through which it articulated the reasoning behind its metaphorical change of heart and argued that we should reverse its approval of Carlino's development. 2021 WL 3046662, at *5. Slip. Carlino then filed an application to strike the Board's brief. Board was judicially estopped from presenting arguments that contradicted the

[5] It appears that this reversal was driven created a new majority that opposed Ca. *See* Common Pleas Op., 6/27/22, at 8-9.

5

positions it had taken in the matter when it was before Common Pleas. *Id.*[6] On February 22, 2021, the Township withdrew fRrRoam Appe 964a.

The Township then commenced a fronta develop the Property, by attempting to effectively unwind the aforementioned declaration of taking. On March 4, 2021, the Board passed a resolution by a 2-1 vote that reads as follows, in relevant part:

> WHEREAS, on November 17, 2014, the Township filed a Declaration of Taking and supporting documents to effectuate the condemnation of certain portions of land for a connector road between North Guthriesville Road and Horseshoe Pike; and
>
> WHEREAS, the Township properly condemned such portions of land under the Eminent Domain Code (26 Pa. C.S.[] §[§] 101[-1106]); and
>
> WHEREAS, the final design of the connector road resulted in portions of the condemned land being unnecessary for the proposed connector road (the " Excess Lan); and
>
> WHEREAS, the Excess Land does not serve the purpose for which it was condemned; and
>
> WHEREAS, the Township desires to offer return of the Excess Land to the appropriate condemnee pursuant to the provisions of Section 310 of the Eminent Domain Code.
>
> NOW, THEREFORE, BE IT RESOLVED, by the Board . . . as follows:
>
>> 1. [T]he Township's Special Couns to prepare and effectuate the notice of the offer and all other documents required by Section 310 and Section 305(b) of the Eminent Domain Code;

[6] On July 20, 2021, we str *Brandywine V* on es Board's a grounds and affirmed Common Pleas' decision t Carlino's de *See* slip oppatn 15-48, 2021 WL a 3046662, at *8-*24.

2. [T]he Township Engineer is authorized to prepare all necessary legal descriptions, plot plans and other technical documents required under Section 305(b) and Section 310 of the Eminent Domain Code; and

3. [S]taff of the Township is authorized to complete any further actions required to effectuate the transfer of the Excess Land, as appropriate under the laws of the Commonwealth of Pennsylvania.

R.R. at 974a.[7] On March 29, 2021, a lawyer representing Appellants responded to the resolution 'as legal strategy, see solicitors in which the Township's lawyer requested that the Township return approximately half of the condemned land to Appellants, on the basis that "[t]he connector road nor for the stormwater *See id.* at 977a-84a.

Carlino, which had been unaware of the Board's resolution March both prior to its consideration by the Board and for some time after its passage, then sent a letter to the Board on April 12, 2021.[8] Therein, Carlino stated that the resolution was illegal and contravened state and federal court rulings that had conclusively established "that the Township has not abandoned the purpose for the condemnation[.]" *Id.* at 988a-91a. Additionally, Carlino stated that the Board had until "the end of business on . . . Ap rescind this resolution, while a failure to do so would res lawsuit against the Township [and] Supervisors Winters and Scherbak individually,

---

[7] The two supervisors who voted in favor of this resolution were George Scherbak and Jason Winters, *i.e.*, two of the defendants. *See* R.R. at 974a-75a. Carlino's particulars of that lawsuit are discussed *infra*.

[8] Carlino had no knowledge at this point about the Township solicitor. *See* Common Pleas Op., 6/27/22, at 10-13; R.R. at 397a-98a.

7

for breach of the [m]emorandum of [u]nderstanding and [of the d]evelopment [a]greement and request[ing] injunctive relief. *Id.* at 991a.

Despite this warning, the Township continued to move forward with facilitating the return to Appellants of the portion of the condemned land identified in the March 29, 2021 letter. *See id.* at 993a-1003a. In response, Carlino sent a second letter to the Board on May 25, 2021, in which it reiterated its previous claims and threats of litigation, and disputed made regarding the putatively excessive nature of the aforementioned condemnation. *See id.* at 1005a-12a. The Township ignored this second letter and, on August 20, 2021, its solicitor filed a "Declaration of D Common Pleas, in which the solicitor stated that

> [t]he Township has determined that a portion of the [condemned] property shall not be necessary for the construction of the [connector road] . . . , and therefore pursuant to [Section] 310(a)(1) of the Eminent Domain Code, that such . . . [p]ortion has been abandoned for the purpose of its condemnation and is hereby offered to the condemnees, L&R and Cropper.

*Id.* at 1020a-21a. The Township's solicitor also declared that Cropper and L&R had accepted its offer part of the condemned land, *i.e.*, the area abandoned that Appellants had sought through the March 29, 2021 letter, as well as that Cropper and L&R would retake title to it upon the Declaration of Di *See id.* at 1021a-26a; Common Pleas Op., 6/27/22, at 17-21. As with the B March 4, 2021 resolution, Carlino did not receive any advance notice regarding the Township's filing of the . Additionally, and ion o without Carlino's Appellants and the Township undertook sent, coordinated efforts in the late summer and early fall of 2021 to redesign the

8

connector road's route to account for *See* for R.R. at 1031a-33a; Common Pleas Op., 6/27/22, at 21.

The final straw for Carlino was when it received word from a third party that the Township intended to enter into some sort of settlement agreement (Settlement Agreement) with Appellants, the particulars of which were unknown to the general public at that time.[9] On December 13, 2021, Carlino submitted a records request to the Township, through which it sought all relevant records regarding this Settlement Agreement. *See* R.R. at 1035a. The following day, Carlino filed suit against Appellants, the Township, Supervisors Scherbak and John Winters, Corporations in Common Pleas. *Id.* at 13a-14a. Carlino summarized its reasons for filing suit as follows:

> Township Supervisors[] Scherbak and Winters[] have wrongfully conspired with [Appellants] to prevent, obstruct and/or delay Carlino from developing its property with a Giant Food Store, in accordance with its approved development plan, in order to protect [Appellants'] monopoly over the sole existing food store in the community. Scherbak's current Winters major position on the Board . . . is due to terminate by January 3, 2022, when a newly elected [s]upervisor replaces Scherbak. However, upon information and belief, Scherbak and Winters have entered into a purported agreement with [Appellants] whereby the connector road to be built as part of Carlino's approved plan relocated further west on Carlino' causing Carlino's property to be conder approved development plan thwarted. This attempted interference with Carlino's approv

---

[9] Carlino did not obtain a copy of the Settlement Agreement until December 17, 2021. R.R. at 415a. The thrust of this Agreement was that Appellants agreed to settle, discontinue, and/or waive a number of pending legal actions and potential damages claims against the Township and, in return, the Township granted Appellants a number of favorable development rights and promised to take certain, subsequently approved land steps previously approved land development plan for the Property. *See id.* at 1043a-48a.

direct breach [of the] Township's contractual obligations to Carlino, thereby subjecting the Township to substantial damages to Carlino for the substantial legal fees it has paid on the Township's defense of [Appellants'] repeated meritless litigation against the Township. Carlino has paid in excess of $1.5 million (a conservative estimate) to reimburse the Township for litigation and engineering fees incurred in defending against [Appellants'] repeated meritless litigation, including a federal antitrust action which was ultimately dismissed against the Township. Carlino seeks to enjoin the Township and [Appellants] from taking their latest wrongful, illegal actions – for which [Scherbak and Winters] have no authority, particularly as a lame duck Board. If the [Township and Appellants] are not enjoined, the Township could well become insolvent due only to the legal expenses it will be compelled to pay back to Carlino for breach of its contractual obligations. In other words, this Township needs the Court's direct assistance to p[revent] further harm and costing the Township taxpayers well in excess of $1.5 million in legal expenditures owed to Carlino as a direct result of [Scherbak and Winters'] conspiracy with [Appellants] to intentionally harm Carlino in breach of the Township's contracts. Carli[no is] bringing this action (1) to stop these lame duck [s]upervisors from further causing damage to Carlino and (2) to declare null and void their illegal transfer of condemned property to L&R and/or [Appellants], in breach of the Township's contractual obligations to Carlino.

R.R. at 16a-17a. In line with this, Carlino pled three claims: breach of contract against the Township, Scherbak, and Winters; tortious interference with contractual relations against Appellants; and civil conspiracy against all of the defendants. *Id.* at 15-19. As relief, Carlino requested an injunction that would both prevent the defendants from "taking any further ste[ps ...] any transfers of condemned property to [Appellants, ]" as well as com[pensatory and] punitive damages, and such other and further relief that, cos[...]

10

[Common Pleas] deem[ed] appropriate." *Id.* at 17a-19a. Carlino then supplemented its suit by filing its Emergency Petition. Therein, Carlino briefly reiterated many of the averments it had made in its Complaint and alleged that the Board intended to vote upon the Settlement Agreement at a public hearing that was scheduled for December 16, 2021, in an effort to bind the Township before the Board's new slate of supervisors was sworn into office in early January 2022. *Id.* at 205a-06a. Of particular note, Carlino asserted that the Settlement Agreement's adoption would both cause it to suffer substantial monetary damages, for which the Township and Appellants would be liable, and also result in immediate and irreparable harm to its commercial and property interests for which pecuniary compensation would be inadequate. *See id.* at 207a-08a. In addition, Carlino maintained that a preliminary injunction was proper because it was likely to prevail on the merits of its Complaint; that an injunction would inure to the benefit of both the Township and the public-at-large (by allowing the new Board to consider the Settlement Agreement and, in the interim, preventing the Township and its taxpayers from incurring liability for monetary damages suffered by Carlino); and that the relief sought was both narrowly tailored and would preserve the *status quo*. *Id.* at 207a-10a. As such, Carlino requested that Common Pleas grant a preliminary injunction that would prevent the Township from

> (a) entering into, voting or authorizing any agreement with [Appellants] until the new Board . . . is appointed and can vote on whether to approve any such agreement; (b) taking any further steps to transfer property to [Appellants] that is subject to Carlino's approved development taking any further steps to thwart in any way Carlino's approved development plan; [as well as s]uch other relief that [Common Pleas] deems proper and just.

*Id.* at 210a.

Carlino's legal effort to prevent the Settlement Agreement's adoption, as Supervisors Scherbak and Winters voted to approve it during the course of the Board's December 16, 2021 hearing. *See id.* at 1093a-1115a.[10] Common Pleas then convened a hearing of its own on December 21, 2021, regarding the Emergency Petition and, concluding that Carlino had satisfied the requirements for a preliminary injunction, ultimately granted the Emergency Petition via an order issued on April 4, 2022, followed by a second, April 11, 2022. In doing so, Common Pleas ruled:

> 7. The Township's 'purported transfer' of condemned land to . . . L&R . . . and . . . Cropper . . . as set forth in [the] Declaration of Disposition of Land[] . . . is and was illegal and is hereby invalidated and declared void *ab initio* because the purported transfer violates [both Common Pleas' and Commonwealth Court's de... Board's approval of Carlino's lan...; [Section 508 of] the [Pennsylvania] Municipalities Planning Code [(MPC)], 53 P.S. § 10508,[11] and [Sections 308 and 310 of] the Eminent Domain Code, 26 Pa. C.S. §§ 308, 310.
>
> 8. Title to the condemned parcel no. 30-2-47.1 (formerly owned by L&R and Cropper) (Parcel ID No. 3002-004701000) is hereby declared quieted to remain solely in the Township's name, and with all and any claims by L&R, Cropper[,] or any other [d]efendant [named in Carlino's ... extinguished completely and in their entirety *ab initio*.
>
> 9. The alleged "Settlement Agreement" which a prior majority of the . . . Board . . . signed on December 16, 2021 solely with [Appellants], is declared invalid, *ultra vires*

---

[10] Neither the Board nor Appellants provided the public with copies of the Settlement Agreement either before or during the hearing... solicitor verbally summarized its contents to those in attendance at the hearing. *See* R.R. at 1095a-97a.

[11] Act of July 31, 1968, P.L. 805, *as amended*.

12

and void *ab initio* in its entirety, with no part of it surviving, because it violates, *inter alia*, the [aforementioned Common Pleas and Commonwealth Court decisions], [Section 508 of] the [MPC], 53 P.S. § 10508, and "contractual commitments with' Carlino.

10. The Township shall take immediate steps to unwind, rescind or withdraw from any and all steps taken to implement the alleged Settlement within five days of the date of this Order[.]

*Id.* at 627a-29a. This appeal to our Court followed shortly thereafter.

## II. Discussion

Appellants raise the following arguments in support of their challenge to Common Pleas' af,[12] which we rearrange and summarize as follows. First, Carlino waived its ability to contest the Township's transfer to Cropper and L&R, because Carlino failed to exhaust the administrative remedies that were available to it both after the Board's March 4, 2021 resolution and the Board's December 16, 2021 approval. Appellants' Br. at 22-25. Second, Common Pleas improperly quieted title regarding the at-issue portion of the condemned parcel, as such relief had not been sought by Carlino and did not restore the *status quo ante*. In doing so, and by essentially terminating Appellants' property rights regarding the land that had been transferred through the Settlement Agreement, Common Pleas unlawfully awarded Carlino a permanent injunction. *Id.* at 27-29. Third, Common Pleas abused its discretion and erred as a matter of law by granting the Emergency Petition, because it failed to properly consider all six prerequisites for a preliminary injunction, as well as because its

---

[12] "An order that grants or denies, modifies . . . continue, or dissolves or refuses to dissolve an injunction . . . interlocutory basis, subject to a handful of exceptions that are inapplicable to this situation. *See* Pa. R.A.P. 311(a)(4).

13

factual findings failed to support its determinations regarding irreparable harm and impact upon the public interest. *Id.* at 18-22. Fourth, the Board appropriately exercised its authority when it entered into the Settlement Agreement with Appellants and, thus, Common Pleas erred by ruling that the Settlement Agreement was *ultra vires* and void *ab initio*. *Id.* at 25-27. Finally, Common Pleas erred by failing to mandate that Carlino post an injunction bond. *Id.* at 17-18.

We are unpersuaded by Appellants' assertion that Carlino has forfeited its chance to oppose the land transfer. Generally speaking, a wide range of actions undertaken by local authorities constitute adjudications from which aggrieved individuals must appeal in order to preserve and vindicate their rights. Per Section 101 of the Administrative Agency Law, an adjudication is

> [a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made[, but] does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa. C.S. § 101. Accordingly,

> we have held that any agency action determining the personal or property rights or obligations of the parties before an agency in a particular proceeding is an adjudication. If, however, the agency action does not affect the rights of the parties, but only affects the interest of the public in general, then the action will not be deemed an adjudication.

*Ondek v. Allegheny Cnty. Council*, 860 A.2d 644, 648 (Pa. Cmwlth. 2004) (internal citations and some punctuation omitted). In keeping with this broad definition, a settlement agreement that resolves a land dispute between a municipality and another party is an adjudication which must be challenged through an appeal via the

14

Local Agency Law to the appropriate court. *See Money v. Bd. of Supervisors of Twp. of Westtown*, 89 A.3d 308, 312 (Pa. Cmwlth. 2014); 2 Pa. C.S. § 752 ("Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals[.]"). "Where a party is aware of a proposed settlement, that party is obligated to intervene and appeal the purported illegality of the settlement. If it does not, the settlement will be binding on the parties that were aware of the ...." *Money*, 89 A.3d at 312. By the same token, generally applicable local ordinances and resolutions are *not* adjudications and, as such, *cannot* be contested in that manner. *See Mazur v. Trinity Area Sch. Dist.,* 926 A.2d 1260, 1265 (Pa. Cmwlth. 2007) ("[T]he Local Agency Law is not the model for challenging the merits of legislative e...

It follows, then, that Carlino did not waive its ability to challenge the Town's transfer of land to Cropper and L&R. Simply put, though the resolution specifically and directly affected Carlino's rights, it remains that the Board issued the March 4, 2021 resolution pursuant to its authority under the Eminent Domain Code, *not* to resolve some sort of formal dispute or proceeding.[13] *See Ondek,* 860 A.2d at 648. As for the Declaration of Disposition of Land, it was merely an exercise of the very municipal power that was authorized by that same resolution. Therefore, neither one qualifies as an adjudication from which an appeal could be taken.

Nor did Carlino's waiver of the Settlement Agreement result in such appeal waiver, either, despite the fact that it did constitute an appealable adjudication. As

---

[13] Indeed, it seems that the March 4, 2021 resolution sprang forth from behind-the-scenes machinations that involved Supervisors Scherbak and Winters. *See* Common Pleas Op., 6/27/22, at 9.

just discussed, the Declaration of Disposition of Land was the vehicle by which the Township returned a portion of the condemned area to Cropper and L&R; thus, the fact that Carlino did not appeal the Settlement Agreement has no bearing on whether it preserved its ability to challenge that land transfer. Furthermore, Appellants' argument would be similarly unavailing even if construed as a broader assertion that Carlino had waived its ability to challenge the Settlement Agreement as a whole. Guiding us to this conclusion is the logic behind our decision in an analogous case, *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777 (Pa. Cmwlth. 1976). In *Raum*, Tredyffrin Township enacted an ordinance rezoning land that was owned by Richard J. Fox, Greenview Associates, and Picket Post Village, Inc. (collectively Fox), to create what it called a "Uniform" development. 370 A.2d at 780. Local residents and a community group then sought relief from Tredyffrin Township's hearing board, which affirmed both the issuance of various, necessary permits to Fox, whereupon the group and residents appealed that decision to Common Pleas, which reversed the zoning hearing board. *Id.* Subsequently, we reversed the lower court, however, concluding the ordinance was, in fact, valid. *Id.* Our Supreme Court denied *allocatur*, whereupon Tredyffrin Township

> commenced what this Court view[ed] as a deliberate
> attempt to thwart the letter and spirit of our validation of
> the Fox zoning [through] unjustified refusals to grant
> certain permits, the enactment of harsh and unreasonable
> fee schedules pointed to Fox's development of [the at-
> issue] tract, purposeful delays in acting upon applications
> for development submitted by Fox, and intimidation by
> advertising rezoning of [Fox's land] immediately
> following the Supreme Court's denial of *allocatur*...
> [thereby] exhibit[ing] a persistent intent to thwart our
> [ruling] and in turn the meaningful development of [Fox's
> land].

*Id.* at 780-81. Fox responded by filing a petition with our Court, through which it requested enforcement of the judgment the Court had issued in the original case. *Id.* at 780. Prior to some merits, the *Raum* court addressed, and denied, tion' Tredyffrin Township's motion to quash the petition. the Court

> [declined to] accept the notion th[at]
> remedy [was through] appeal to [Tredyffrin Township' ]s
> zoning [hearing] board and thereafter to the local court of
> common pleas, for given the inherent delays in such a
> process, a party seeking to develop, once having had his
> zoning validated and reaching the stage of implementation
> by applications for permits, would surely be frustrated if it
> became necessary to follow the circuitous route each time
> a permit application was denied.

*Id.* at 782. Expanding upon this point, the *Raum* court concluded that to appeal the Township's actions did n[ot] petition's the court had both inherent and statutory authority to enforce its own orders, which was especially applicable in instances where a litigant sought to vindicate its judicially confirmed zoning rights. *Id.* at 782-83.

The factual and procedural circumstances here are indisputably different than in *Raum*, but that is ultimately of no moment. Though this matter involves eminent domain, revesting of land with a condemnee, involuntary redesign of previously approved development plans, a settlement agreement, and a new lawsuit in Common Pleas, rather than, as in *Raum*, rezoning, permitting and fee disputes, and a petition to enforce at the appellate level, the issue at the heart of both matters is the same: a landowner's effort to enforce its legal development rights against a municipality that has been conducting a concerted and multifaceted effort to vitiate those rights. While it would have been more procedurally appropriate for Carlino to challenge the Settlement Agreement by filing

a petition to enforce judgment with this Court, *see id.*, seeking injunctive relief from Common Pleas was nevertheless proper as well, since an injunction in this instance effectively offers the same remedy that would be available through such a petition, namely, ensuring that a municipality complies with judicial rulings without requiring a landowner to play what would amount to a game of Whac-A-Mole through litigation.

Nevertheless, we agree with Appellants that it was an abuse of discretion for Common Pleas to grant the Emergency Petition.

> The six essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction are as follows: (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pennsylvania v. Com.*, 1 0 4 A . 3 d 4 9 5 , 5 0 1 ( preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the o t h e *Allegheny Cnty. v. Com.*, 544 A.2d 1305, 1307 (Pa. 1988). B y c o n orr a s t , permanent injunctive relief, the following criteria must be established: (1) the right to relief is clear; (2) the relief is necessary to prevent an injury which cannot be compensated by damages; and (3) greater injury will occur from refusing the

injunction than from granting it." *First Phila. Preparatory Charter Sch. v. Dep't of*

*Educ.*, 179 A.3d 128, 133 n.2 (Pa. Cmwlth. 2018).

> [A] preliminary injunction is intended to preserve the *status quo* and prevent imminent and irreparable harm that might occur before the merits of the case can be heard and determined. After a preliminary injunction is awarded or denied, the case proceeds for a final hearing on the merits. . . . The preliminary injunction proceeding is distinct from the final hearing on the merits. . . . Indeed, it is well established that separate standards govern a request for a preliminary injunction and a request for permanent injunctive relief: a preliminary injunction looks for the presence of imminent, irreparable harm, whereas a permanent injunction is warranted if no adequate remedy at law exists for a legal wrong.

*Lindeman v. Borough of Meyersdale*, 131 A.3d 145, 151 (Pa. Cmwlth. 2015); *see id* at 151 n.6 ("A court's final disposition is independent of its determination relating to preliminary injunctive relief and the [granting] of the latter does not foreclose an order [denying] a permanent injunction.").

> We keep in mind that an appellate court reviews an order granting or denying a preliminary injunction for an abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, . . . 828 A.2d 995, 1000 ([Pa.] 2003). Under this highly deferential standard of review, an appellate court does not inquire into the merits of the controversy, but examines the record . . . were any apparently reasonable grounds for the action of the court[] . . . *Id.* (quoting *Roberts v. [Bd.] of Dirs. of Sch. Dist.*, . . . 341 A.2d 475, 478 ([Pa.] 1975)).

*SEIU Healthcare*, 104 A.3d at 501. "Moreover, we will not 'inquire into the merits of the controversy, but . . . . for or against such action unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong . . ." *Credit All.*

*Corp. v. Phila. Minit-Man Car Wash Corp.*, 301 A.2d 816, 818 (Pa. 1973) (quoting *United Nat. Gas Co. v. Wagner*, 208 A.2d 843, 844 (Pa. 1965)).

In its "corrected" 2022 order, Common Pleas explicitly stated, in relevant part:

1. Carlino's Petition for prelimina[ry injunction is] **GRANTED.**

2. Carlino has met the requirements for obtaining injunctive relief by establishing that it is likely to succeed on the merits of the claims in its Complaint; it will suffer immediate and irreparable harm if relief is not granted that cannot be adequately compensated by damages; the harm it will suffer is greater than any harm any interested part would suffer if the relief is granted; the parties will be returned to the *status quo* that existed prior to the occurrence of the wrongful conduct; the relief is narrowly tailored to the remedy sought and the remedy will not adversely affect the public interest. *Summit Towne*[,] . . . 828 A.2d [at] 1000-[01].

    . . . .

6. Carlino demonstrated that it will suffer irreparable harm if the following injunctive relief is not granted.

R.R. at 636a-37a (emphasis in original); *see also* Common Pleas Op., 6/27/22, at 28, 34-44, 46-47 (explaining arguments regarding the propriety of issuing a preliminary injunction are without merit). Common Pleas therefore clearly viewed the Emergency Petition through the lens of the six-part preliminary injunction test, *not* the one applicable to permanent injunctions. *Compare First Phila.*, 179 A.3d at 133 n.2, *with SEIU Healthcare*, 104 A.3d at 501. By doing so, Common Pleas evinced its unmistakable intent to issue a preliminary injunction.

Despite this objective, however, the substance of the relief that Common Pleas granted through its April 11, 2022 order was far from preliminary. Instead, Common Pleas declared that the Township's Declaration transfer

20

of Disposition of Land " is and was illegal and is he[reby] void *ab initio;*" extinguished Appellants' real propert[y]... that the Settlement Agreement was " in v[ultra] ires, and void *ab initio* in its entirety;" and ordered the Township to expeditiously take all steps necessary to unwind the Settlement Agreement. R.R. at 627a-29a. It is clear, then, that Common Pleas granted what amounts to a permanent injunction. In doing so, Common Pleas erred by failing to restore the *status quo ante*, reaching the merits of the underlying case, and awarding Carlino relief that far exceeded that which could be lawfully dispensed through a preliminary injunction.[14]

### III. Conclusion

In light of the foregoing, we vacate Common [Pleas'] April 4, 2022 and April 11, 2022 orders and remand this matter to the lower court. On remand, Common Pleas shall again consider, based upon the record as currently constituted, whether Carlino is entitled to a preliminary injunction and, if so, shall grant relie[f in its] favor only to the extent it comports with the interim nature of such injunctions.[15]

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[14] Moreover, even if we assumed *arguendo* that Common Pleas had intended to grant a permanent injunction in Carlino's favor, the subsequent opinion would serve to show that it did not actually apply the proper legal standard when determining whether a permanent injunction was warranted under the circumstances. *See* R.R. at 636a-37a; Common Pleas Op., 6/27/22, at 28, 34-44, 46-47.

[15] As we have resolved this appeal in Appella[nts' favor]... of their arguments.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carlino East Brandywine, L.P. | : | |
| | : | |
| v. | : | No. 367 C.D. 2022 |
| | : | |
| East Brandywine Township, Jason R. Winters, George Scherbak, Brandywine Village Associates, L.P., L&R Partnership, LLC, Leonard G. Blair, individually and as general partner of L&R Partnership, Richard J. Blair, individually and as general partner of L&R Partnership, John R. Cropper, individually and as general partner of L&R Partnership, and John Doe Corporations and Individuals | : : : : : : : : : : : | |
| | : | |
| Appeal of: Brandywine Village Associates, L.P., L&R Partnership, LLC, Leonard G. Blair, Richard J. Blair, and John R. Cropper | : : : : | |

## O R D E R

AND NOW, this 11th day of July, 2023, it is hereby ORDERED that the Court of Common Pleas (Common Pleas) April 4, 2022 and April 11, 2022 orders are VACATED. It is FURTHER ORDERED that this matter is REMANDED to Common Pleas, with instructions that the lower court again consider, based upon the record as currently constituted, whether Appellee Carlino East Brandywine, L.P. (Carlino) is entitled to a preliminary injunction and, if so, shall grant such relief only to the extent it comports with the interim nature of such injunctions.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge